PEOPLE v HAYNES

Docket No. 144300. Submitted November 17, 1992, at Detroit. Decided May 17, 1993, at 9:00 A.M. Leave to appeal sought.

Kermit E. Haynes, at age sixteen and following an automatic waiver of the probate court's jurisdiction, pleaded guilty in the Detroit Recorder's Court, Dalton A. Roberson, J., of first-degree murder, assault with intent to rob while armed, and possession of a firearm during the commission of a felony. The court, following a hearing pursuant to MCL 769.1(3); MSA 28.1072(3), sentenced the defendant as a juvenile rather than as an adult and committed him to the Department of Social Services until age twenty-one. The prosecution appealed.

The Court of Appeals *held:*

1. A bifurcated standard is applied in reviewing a trial court's decision to sentence a minor as a juvenile or as an adult. First, the trial court's findings of fact supporting its determination regarding each of the factors enumerated in MCL 769.1(3)(a)-(f); MSA 28.1072(3)(a)-(f) are reviewed for clear error. Second, the ultimate decision whether to sentence the minor as a juvenile or as an adult is reviewed for an abuse of discretion.

2. In this case, the trial court clearly erred in making its findings of fact with respect to the statutory factors and abused its discretion in deciding to sentence the defendant as a juvenile. A preponderance of the evidence at the sentencing hearing indicated that the defendant should have been sentenced as an adult. On remand, the defendant must be resentenced as an adult.

3. The trial court lacked jurisdiction to convict the defendant of felony-firearm. Pursuant to *People v Deans,* 192 Mich App 327 (1991), the statute that permits automatic waiver of probate court jurisdiction applies only to the felonies enumerated in that statute. Felony-firearm is not one of the enumerated felonies. Accordingly, the defendant's felony-firearm conviction is vacated.

Reversed and remanded.

MURPHY, J., concurring in part and dissenting in part, stated that the felony-firearm conviction should be vacated but that

the decision to sentence the defendant as a juvenile should be affirmed because the trial court did not clearly err in its findings of fact regarding the statutory factors and did not abuse its discretion in deciding to sentence the defendant as a juvenile.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *George E. Ward,* Chief Assistant Prosecutor, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, for the people.

State Appellate Defender (by *Susan Meinberg Thomas*), for the defendant on appeal.

Before: DOCTOROFF, C.J., and MURPHY and CAVANAGH, JJ.

DOCTOROFF, C.J. Defendant pleaded guilty of first-degree murder, MCL 750.316; MSA 28.548, assault with intent to rob while armed, MCL 750.89; MSA 28.284, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Following an extensive sentencing hearing pursuant to MCL 769.1(3); MSA 28.1072(3), the Recorder's Court concluded that defendant should be sentenced as a juvenile, instead of as an adult, and placed defendant with the Michigan Department of Social Services until age twenty-one. The prosecution appeals that ruling, claiming that the court abused its discretion in sentencing defendant as a juvenile. We reverse and remand with instructions to sentence defendant as an adult.

Defendant's guilty plea arises out of the shooting death of Benjamin Gravel on his way home from the Bayview Yacht Club on February 8, 1990. Defendant and a group of young men spent the evening attempting to steal cars from people driv-

ing in Detroit by pointing a gun at the drivers and ordering them to stop. After one of the others made several unsuccessful attempts to steal a car, defendant acquired the gun in an effort to demonstrate the proper way to execute the crime. The group proceeded to Clairepointe Road in the City of Detroit, where they placed a tree in the road outside the yacht club. After a few cars successfully avoided the tree, Mr. Gravel came upon the obstruction in his Cadillac. Defendant's statement, entered into the record, indicated that he walked up to the car and shouted at Gravel to get out of the car. When Gravel did not stop, defendant fired a number of shots into the car as it drove off. Statements of other members of the group revealed that defendant made statements after the murder to the effect that had Gravel stopped the car, he wouldn't have "smoked his ass."

In reviewing a trial court's decision to sentence a defendant as an adult, this Court applies a bifurcated standard of review. *People v Passeno,* 195 Mich App 91, 103; 489 NW2d 152 (1992). The trial court's findings of fact are reviewed under the clearly erroneous standard, while the ultimate sentencing decision is reviewed for an abuse of discretion. *Id.* The Legislature has established the following guidelines that must be considered by a trial court in making its decision to sentence a defendant as a juvenile or an adult:

> (a) The prior record and character of the juvenile, his or her physical and mental maturity, and his or her pattern of living.
> (b) The seriousness and the circumstances of the offense.
> (c) Whether the offense is part of a repetitive pattern of offenses which would lead to 1 of the following determinations:
> (i) The juvenile is not amenable to treatment.

(ii) That despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to disrupt the rehabilitation of other juveniles in the treatment program.

(d) Whether, despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to render the juvenile dangerous to the public if released at the age of 21.

(e) Whether the juvenile is more likely to be rehabilitated by the services and facilities available in adult programs and procedures than in juvenile programs and procedures.

(f) What is in the best interests of the public welfare and the protection of the public security. [MCL 769.1(3); MSA 28.1072(3).]

The prosecution has the burden of proving, by a preponderance of the evidence, that the best interests of the juvenile and the public would be served by sentencing the juvenile defendant as an adult. MCR 6.931(E)(2); *People v Lyons,* 195 Mich App 248, 252; 489 NW2d 218 (1992). Contrary to defendant's argument on appeal, we believe that the prosecution presented a preponderance of evidence to justify imposition of an adult sentence.

With regard to the first factor, the trial court made the following findings in its opinion:

As to his pattern of living, the history of his home and family life which was put on the record, persuades the court that whatever his mode of living in the earlier years happen to be they were not of his making. If his latter pattern of living became that which society is unwilling to abide, to what extent the defendant is responsible as compared to the extent that those who should have been responsible but were not, are to blame, one can only speculate. So, it is difficult for the court to find that defendant's pattern of living is a factor which militates in favor of adult confinement for this defendant. The court finds as fact that [it] does not.

While we understand the court's finding that a contributing cause to defendant's past behavioral problems was the environment in which he was raised, we believe that the court erred in dismissing the prior criminal conduct and antisocial pattern of living of this defendant as the fault of his role models.

Defendant's criminal conduct began at an early stage in his life. Defendant was reported to have been in trouble with the authorities for fighting in seventh grade, was suspended from school on six separate occasions for activity ranging from loitering to assault and battery, and had a prior adjudication for attempted possession of cocaine. He was also charged with felonious assault and being a minor in possession of a firearm, but the charges were dismissed. In the context of the evaluations, defendant admitted to selling "crack" cocaine between the years 1987 and 1989, during which time he claimed to have earned between $500 and $600 a day in drug sales.

Defendant was placed in the Wayne County Youth Home between August 20 and 23, 1988. On October 27, 1988, a warrant was issued for defendant after he escaped from custody. Defendant was returned to the youth home in December 1989. During that time, defendant was disciplined on a number of occasions for negative and disruptive behavior and sexual assault. On February 8, 1990, defendant committed the instant offense. Since his placement in the youth home following the murder, defendant has been disciplined for refusing to follow directions, cursing, being disrespectful to the staff, fighting, gang activity, and truancy from school. Defendant was placed in isolation at least five times since the murder. Isolation is the most severe form of punishment exacted by the faculty of the youth home.

In view of this persistent antisocial behavior before and after the instant offense, we believe the trial court's finding that this factor did not weigh in favor of adult disposition constitutes clear error. The fact that defendant has had a difficult family background and obviously has not been exposed to positive role models does not excuse his past criminal and antisocial behavior. The language of MCL 769.1(3)(a); MSA 28.1072(3)(a) does not limit the consideration of a juvenile's prior record and pattern of living to those situations where the trial court concludes the defendant should be held personally accountable.

The next factor to be considered is the seriousness and the circumstances of the offense. MCL 769.1(3)(b); MSA 28.1072(3)(b). The trial court, in addressing this factor, merely stated that this was an offense of "ultimate gravity." However, merely characterizing the offense as one of "ultimate gravity" begs the question whether the circumstances surrounding the offense should be given more weight in deciding to sentence a defendant as an adult. In this case, defendant pleaded guilty of first-degree murder. He was not only a participant in the crime, but was the one who fired the fatal shots. We believe that the trial court erred in failing to articulate the circumstances surrounding this offense and the effect that those circumstances had on its ultimate sentencing decision.

The trial court must next determine whether the offense is part of a pattern of offenses leading to one of the following determinations:

(i) The juvenile is not amenable to treatment.

(ii) That despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to disrupt the rehabilitation of other juveniles in the treatment program.

With regard to this factor, the court stated in its written opinion as follows:

> The court does not find that the evidence established that the offense committed by the defendant is part of a repetitive pattern of offenses which would lead to a determination that he is not amenable to treatment; or, that owing to the nature of the delinquent behavior, the juvenile is likely to disrupt the rehabilitation of others in the treatment program.

A review of the statute and the court's findings makes it apparent that the trial court merely stated its conclusions on this issue in language nearly identical to the statute without having made the necessary supporting findings from the evidentiary record.

At the dispositional hearing, there were three witnesses who had evaluated defendant and made recommendations with respect to the ultimate disposition. Robert Lemanek, an intake worker for the Department of Social Services, recommended that defendant be placed in a juvenile facility. Dr. Karen Noelle Clark, a psychologist, completed an evaluation of defendant and reported that "with intense therapy and structure [defendant] could be rehabilitated within the juvenile justice system." Finally, Robert A. Bartz, senior psychologist at the Recorder's Court Psychiatric Clinic, recommended that defendant be placed in an adult correctional facility.

We believe that the trial court clearly erred in relying on the recommendations of Mr. Lemanek and Dr. Clark, and further erred in discrediting the recommendation of Mr. Bartz. Mr. Lemanek testified that, despite defendant's past academic problems in school, defendant showed improvement in the Wayne County Youth Home and

generally complied with the rules of the home. However, this testimony is directly contrary to the objective evidence referred to above, which indicated that defendant persistently disrupted the home before and after the murder. Mr. Lemanek further testified that there was a presumption in favor of juvenile placement and that he generally made recommendations with that goal in mind. Mr. Lemanek admitted that he was unaware of defendant's poor disciplinary record at the youth home at the time he made his recommendation. Although Mr. Lemanek admitted on cross-examination that defendant was not as well adjusted as he had originally thought, he refused to change his ultimate recommendation.

Dr. Clark evaluated defendant for about 2½ hours and spoke with some of the youth home instructors. In her report, Dr. Clark stated that defendant's response to the victim's death was "rather casual." She further stated that defendant "appears to be heavily influenced by his peers and defiant and rebellious toward authority and societal rules and regulations." Notwithstanding these negative personality traits directly related to his potential for disruptive behavior, Dr. Clark believed that treatment and structure could assist in defendant's rehabilitation. Through cross-examination, it became apparent that the crux of Dr. Clark's evaluation was based upon patently false statements related to her by defendant. When the prosecutor revealed that defendant had told Dr. Clark numerous lies with respect to his school record and his behavioral record at the youth home, she concluded that defendant's past behavior demonstrated that he had assaultive and violent tendencies and further that it didn't look as though defendant "was learning his lesson." None-

theless, Dr. Clark recommended juvenile placement.

Mr. Bartz testified that it was his recommendation that defendant be placed within the adult system. There was some dispute concerning his testimonial recommendation because a written report he had prepared recommended incarceration in a maximum-security juvenile facility. The report contained statements indicating that defendant should be given no leniency and that defendant displayed all the classic signs of being a psychopath. Mr. Bartz attempted to recant the ultimate recommendation in the written report, stating that although he had prepared the report, its ultimate recommendation of juvenile sentencing was erroneous and not intended to reflect his opinion. The court concluded that because of the inconsistency between the testimonial recommendation and the report, it would disregard the testimony and rely on the report.

Upon extensive review of the record and the trial court's findings, we can only conclude that the trial court erred in evaluating the testimony and recommendations of the experts. The objective evidence within the record demonstrates that the instant offense is part of a pattern of lawless behavior by defendant, much of which the experts were unaware. Defendant's prior contacts with the juvenile system, and his behavior within it, manifest a clear propensity by defendant to deliberately disrupt the treatment program and interfere with the rehabilitation of others. Moreover, a preponderance of the evidence indicates that defendant is not amenable to treatment, having received treatment in the past and reverted to more severe criminal episodes. Accordingly, we believe that the trial court's determination that defendant was amenable to treatment and not likely to disrupt

the rehabilitation of others was also clearly erroneous.

The next section of the statute requires the court to determine whether, despite the juvenile's potential for treatment, the nature of the juvenile's behavior is likely to render him dangerous to the public at age twenty-one. MCL 769.1(3)(d); MSA 28.1072(3)(d). Once again, the court merely stated that it did not believe that defendant would be dangerous to the public at age twenty-one without any factual or evidentiary references to support the conclusion. Given the clear trend of defendant to engage in more violent criminal episodes as his life progresses and his defiant behavior after the incident, we believe that defendant is likely to pose a threat to society if released at age twenty-one.

The next factor is whether the juvenile is more likely to be rehabilitated by the services and facilities available in the adult system rather than in the juvenile system. MCL 769.1(3)(e); MSA 28.1072(3)(e). The trial court completely failed to make any findings with respect to this factor. While it is true that there is little evidence in the record from which to make findings specific to this factor, there was testimony from Mr. Lemanek to the effect that the counseling available in the juvenile system was not fully developed, and the educational training was limited to high school equivalency training. In contrast, the presentence investigation report identifies more sophisticated educational, vocational, and psychological treatment programs within the adult system.

The final factor to be considered when determining whether to place a juvenile in the adult system is what is in the best interests of the public welfare and the protection of the public security. MCL 769.1(3)(f); MSA 28.1072(3)(f). The trial court

also failed to make sufficient findings in this regard. Given the above discussion, despite the severe consequences of sentencing defendant as an adult, the potential threat defendant poses to the public welfare and security far outweighs those consequences. Defendant randomly selected an innocent citizen and fired a number of shots at his automobile. Nearly all of the expert testimony indicates that defendant possesses assaultive and violent personality traits and shows no remorse for what transpired on the night of the murder. In fact, the very expert upon whom the court placed so much reliance concluded that defendant was "an emotionally impaired adolescent who has poor impulse control and lack of regard for societal rules and regulations. He is seen as defiant, oppositional and anti-social. He has little regard for the consequences of his behavior."

We believe that the trial court has clearly erred in each of its findings with regard to the factors to be considered under the statute and that the ultimate decision to sentence defendant within the juvenile system constitutes an abuse of discretion. The trial court's decision to sentence defendant as a juvenile is therefore reversed and the case is remanded. The court shall sentence defendant as an adult.

Although neither party has raised the issue, we note that the Recorder's Court lacked jurisdiction to convict defendant of felony-firearm in light of this Court's decision in *People v Deans,* 192 Mich App 327, 330; 480 NW2d 334 (1991). We are cognizant of the fact that this issue is currently before our Supreme Court in *People v Hill* (Supreme Court Docket No. 93406); *People v Veling* (Supreme Court Docket No. 93321), 440 Mich 889 (1992). However, until such time as our Supreme Court decides the issue, we are bound by *Deans.*

Accordingly, defendant's felony-firearm conviction is vacated.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

Cavanagh, J., concurred.

Murphy, J. *(concurring in part and dissenting in part).* I concur in part and dissent in part. I would vacate defendant's conviction of possession of a firearm during the commission of a felony and affirm the judgment of the trial court in all other respects.

At the time of the shooting, defendant was sixteen years old. The Detroit Recorder's Court acquired jurisdiction over defendant pursuant to the automatic waiver provisions of MCL 764.1f; MSA 28.860(6) and MCL 600.606; MSA 27A.606. After defendant pleaded guilty of the charges, the trial court conducted a dispositional hearing pursuant to MCL 769.1(3); MSA 28.1072(3) and MCR 6.931(A) to determine whether the best interests of the juvenile and the public would be better served by sentencing defendant as a juvenile or as an adult. In making this determination, the trial court was required to consider the criteria of MCL 769.1(3); MSA 28.1072(3) and MCR 6.931(E)(3) and give each criterion its appropriate weight under the circumstances.

During the hearing, Robert Lemanek, a social worker with the Michigan Department of Social Services, recommended that defendant be placed within the juvenile system. On cross-examination, Mr. Lemanek admitted that he had been unaware when forming his opinion that defendant had been disciplined several times while in juvenile detention, but maintained his recommendation that

defendant be sentenced as a juvenile. Similarly, Dr. Karen Clark testified that she had performed a psychological evaluation of defendant and recommended that he be placed within the juvenile system. Robert Bartz, a clinical psychologist evaluating defendant, testified during the hearing that he believed defendant should be sentenced as an adult. His earlier report to the trial court, however, recommended that defendant be placed in a juvenile facility. At the conclusion of the hearing, the trial court sentenced defendant to juvenile probation and committed him to the Department of Social Services for confinement in a proper institution until he reaches age twenty-one.

The prosecution challenges the trial court's decision to sentence defendant as a juvenile, first contending that the trial court's decision to sentence defendant as a juvenile was improperly based upon sympathy. The proper inquiry, however, is not whether the trial court exhibited sympathy for defendant, but whether the trial court's findings were clearly erroneous and whether the trial court abused its discretion in applying the criteria of MCL 769.1(3); MSA 28.1072(3). Thus, even if true, the prosecution's allegation that the trial court was sympathetic to defendant is not dispositive.

The prosecution next contends that the trial court incorrectly stated that a presumption exists in favor of juvenile probation with confinement. Although this issue is not addressed by the majority opinion, I would agree with the prosecution that no such presumption exists. I would hold, however, that the trial court's use of the term "presumption" to describe this result is not error warranting reversal. Neither MCL 769.1(3); MSA 28.1072(3) nor MCR 6.931(E)(2) refers to the existence of a presumption in favor of juvenile disposi-

tion. The trial court accurately noted, however, that pursuant to MCR 6.931(E)(2), the burden is on the prosecutor to establish by a preponderance of the evidence that the best interests of the juvenile and the public would be served by sentencing a juvenile defendant as an adult. Thus, while there is not a "presumption" in favor of juvenile disposition, if the prosecution fails to establish by a preponderance of the evidence that the best interests of the juvenile and the public would be served by sentencing a juvenile defendant as an adult, the juvenile is to be sentenced as a juvenile.

The prosecution next contends that during the sentencing hearing, the trial court stated that it was not concerned with whether defendant's sentence was compatible with public safety, thereby improperly abandoning this criterion. Although the majority opinion does not specifically address this issue, I would hold that the trial court did not abandon this criterion. The comments of the trial court must be viewed as a whole and in the context in which they were made. *People v Collier,* 168 Mich App 687, 697-698; 425 NW2d 118 (1988). Here, the challenged remark was made during an exchange in which the trial court advised the prosecutor not to argue the case on the basis of emotion and passion. Immediately after the challenged remark, the court clarified that it would consider the protection of society, but not on the basis of passion. Considering the context in which the challenged remark was made, the subsequent clarifying statement, and the fact that a similar statement did not appear in the trial court's subsequent lengthy opinion, I am satisfied that the remark does not reflect a refusal to consider the protection of the public.

The prosecution next contends that the trial court was obligated to place the greatest emphasis

on the public safety factor, and that the trial
court's finding that there was sufficient time re-
maining in which to turn defendant into a non-
dangerous person is against the great weight of
the evidence. Although I agree that consideration
of the public safety factor is vital, I believe that
the trial court placed the proper emphasis on this
factor. Further, I would hold that the trial court
properly applied all the statutory criteria in this
case and that its findings are not clearly errone-
ous. The majority opinion sets forth in detail those
portions of the record that arguably support find-
ings contrary to those of the trial court. Because
there is also evidence on the record supporting the
trial court's findings, however, I am not prepared
to say that the trial court's findings are clearly
erroneous simply because conflicting testimony
was presented. See, e.g., *People v Brannon,* 194
Mich App 121, 129; 486 NW2d 83 (1992). I would
also note our obligation to give regard to the
special opportunity of the trial court to judge the
credibility of the witnesses who appeared before it.
MCR 2.613(C).

I would further hold that the trial court's ulti-
mate decision to sentence defendant as a juvenile
was not an abuse of discretion. I agree with the
prosecution and with the majority opinion that the
offense of which defendant pleaded guilty is of
utmost seriousness. By adopting MCR 6.931, how-
ever, our Supreme Court has placed the burden
upon the prosecution to do more than demonstrate
that a defendant is guilty of a serious offense for
which adult punishment is permitted. The prosecu-
tion in this case did not demonstrate defendant's
potential either for rehabilitation or for harm to
society. Rather, the prosecution focused only on
the seriousness of the offense, which while one
consideration, is not the sole consideration in de-

termining whether defendant should be sentenced as an adult. Thus, I would conclude that the trial court did not abuse its discretion in holding that the prosecutor failed to prove by a preponderance of the evidence that defendant should be sentenced as an adult.

I agree with the majority that, although not raised by either party, the automatic waiver statute, which grants the trial court jurisdiction to try defendant for certain enumerated life felonies without conducting a waiver hearing, does not grant the court ancillary jurisdiction to try defendant for nonenumerated felonies, such as felony-firearm. *People v Spearman*, 195 Mich App 434, 443; 491 NW2d 606 (1992); *People v Deans*, 192 Mich App 327, 330-331; 480 NW2d 334 (1991). I would therefore vacate defendant's felony-firearm conviction. In all other respects, I would affirm the judgment of the trial court.