PEOPLE v BROWN

Docket No. 150865. Submitted April 5, 1994, at Detroit. Decided June
6, 1994, at 10:00 A.M. Leave to appeal denied, 445 Mich —.

Gregory Brown and Willie Hobbs each pleaded guilty in the
Recorder's Court of Detroit, Dalton A. Roberson, J., of second-
degree murder and assault with intent to rob while armed.
Each defendant was sixteen years of age at the time of the
offense, and, following a dispositional hearing, the court sen-
tenced each defendant as a juvenile. The prosecution appealed,
claiming that the trial court abused its discretion in sentencing
the defendants as juveniles rather than as adults.

The Court of Appeals *held:*

The findings of fact by the trial court relative to the sentenc-
ing determination criteria of MCR 6.931(E)(3) and MCL
769.1(3); MSA 28.1072(3) were not clearly erroneous, and the
court did not abuse its discretion in determining to sentence
the defendants as juveniles.

Affirmed.

JANSEN, J., dissenting, stated that the prosecutor presented,
by a preponderance of the evidence, proofs sufficient to justify
imposition of adult sentences, that the trial court's findings of
fact were clearly erroneous, and that the trial court abused its
discretion in sentencing the defendants to the juvenile system.
The sentences should be set aside, and the matter should be
remanded for imposition of adult sentences.

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, *John D. O'Hair,* Prosecut-
ing Attorney, and *George E. Ward,* Chief Assistant
Prosecutor, for the people.

*John B. Payne, Jr.,* for Gregory E. Brown.

*John R. Minock,* for Willie Hobbs.

Before: CAVANAGH, P.J., and JANSEN and D. C. KOLENDA,* JJ.

CAVANAGH, P.J. This is a prosecutor's appeal as of right from the trial court's decision to sentence both defendants as juveniles. We affirm.

Pursuant to a plea bargain, both defendants pleaded guilty of second-degree murder, MCL 750.317; MSA 28.549, and assault with intent to rob while armed, MCL 750.89; MSA 28.284. At the time of the offense, both defendants were sixteen years old. Following a dispositional hearing, the trial court decided to sentence both defendants as juveniles. The prosecutor appeals from that decision.

On appeal, the prosecutor contends that the trial court erred in sentencing defendants as juveniles because (1) public safety is a factor in sentencing that takes precedence over a juvenile defendant's potential for rehabilitation and (2) the testimony of certain expert witnesses who recommended juvenile sentencing was not entitled to "great deference." These arguments are without merit. The case cited by the prosecutor in support of the first argument actually holds that no single statutory criterion (set forth *infra*) shall be given preeminence over the others. *In re LeBlanc,* 171 Mich App 405, 411; 430 NW2d 780 (1988). With respect to the second argument, the prosecutor has cited no authority, beyond a law review article that suggests that past conduct is the best predictor of future acts, to support his contention. We are not persuaded that the trial court erred in deferring to the expert witnesses.

We turn now to the basic question whether the trial court erred in sentencing defendants as juveniles. We review a trial court's findings of fact at a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

juvenile sentencing hearing for clear error. *People v Passeno,* 195 Mich App 91, 103; 489 NW2d 152 (1992); MCR 2.613(C). Findings of fact are clearly erroneous if, after review of the entire record, this Court is left with a definite and firm conviction that a mistake has been made. *Passeno, supra.* The ultimate decision whether to sentence a minor as a juvenile or as an adult is reviewed for an abuse of discretion. *Id.* at 103-104.

In making its sentencing determination, a court must consider the following criteria:

> (a) the juvenile's prior record and character, physical and mental maturity, and pattern of living;
> (b) the seriousness and circumstances of the offense;
> (c) whether the offense is part of a repetitive pattern of offenses which would lead to the determination:
> (i) that the juvenile is not amenable to treatment, or
> (ii) that, despite the juvenile's potential for treatment, owing to the nature of the delinquent behavior, the juvenile is likely to disrupt the rehabilitation of others in the treatment program owing to the nature of the delinquent behavior;
> (d) whether, despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to render the juvenile dangerous to the public when released at age 21;
> (e) whether the juvenile is more likely to be rehabilitated by the services and facilities available in the adult programs and procedures than in the juvenile programs and procedures; and
> (f) what is in the best interests of the public welfare and the protection of the public security. [MCR 6.931(E)(3).]

See also MCL 769.1(3); MSA 28.1072(3). The prosecution has the burden of establishing by a prepon-

derance of the evidence that the best interests of the juvenile and the public would be served by sentencing the juvenile as an adult offender. MCR 6.931(E)(2); *Passeno, supra* at 102-103.

Our review of the record reveals that the trial court did not clearly err in its factual findings with respect to the statutory criteria, nor did it abuse its discretion in determining to sentence defendants as juveniles. There is no dispute that the offense was an extremely serious one. On the other hand, neither defendant had a prior record of assaultive conduct apart from fighting in school or at the youth home, the offense was not part of a repetitive pattern of behavior, both defendants appeared to be amenable to treatment in the juvenile system and unlikely to disrupt the rehabilitation of others, the expert testimony supported the conclusion that neither defendant was likely to be a danger to the public on his release at age twenty-one, and there was evidence that both defendants were more likely to be rehabilitated in the juvenile system. Compare *People v Miller,* 199 Mich App 609; 503 NW2d 89 (1993), and *People v Haynes,* 199 Mich App 593; 502 NW2d 758 (1993) (reversing trial court's decision to sentence as juveniles codefendants in the same case as the present case, whose prior records and postarrest behavior were considerably more egregious than those of these defendants).

Affirmed.

D. C. KOLENDA, J., concurred.

JANSEN, J. *(dissenting).* I dissent. After thoroughly reviewing the record, I am convinced that Detroit Recorder's Court Judge Dalton A. Roberson abused his discretion in sentencing these two defendants as juveniles.

This case arises out of the shooting death of Benjamin Gravel as he was driving home from the Bayview Yacht Club on February 8, 1990. These two defendants and four other young men spent that evening attempting to steal a car from someone at gunpoint because they wanted a car to go to a party. Before shooting Gravel, Cortez Miller, one of the six defendants involved in this case, unsuccessfully attempted to steal a car and actually shot at it. The group then proceeded to Clairpointe Road in the City of Detroit, near the Bayview Yacht Club, and pulled a tree into the middle of the road to force cars to stop. Gravel came upon the branch in his Cadillac and was apparently talking on his car phone. Brown, who was hiding behind a tree, yelled to "get that car." Kermit Haynes ran up to the car, pointed the gun at the window and told Gravel to get out of the car. Gravel attempted to drive off and Haynes fired three or four shots at the car. The group of young men dispersed and went to a store. There, Brown and Miller bought fifty more bullets for $12. It was not until later that evening, when one of the young men heard that there had been a car crash in the area, that they learned that Gravel had been killed. After the shooting, Brown asked Haynes why he shot so many times, and Haynes responded that Gravel should have "stopped and I wouldn't have smoked his ass" and that Gravel "killed hisself [sic], I told him to stop the car." In his police statement, Brown indicated that they went to Clairpointe because "there ain't no houses or people and because there's nice cars down there."

As stated in *People v Passeno,* 195 Mich App 91, 103; 489 NW2d 152 (1992), this Court applies a bifurcated standard of review in reviewing a trial court's decision to sentence a defendant as an

adult. The trial court's factual findings are re-
viewed under the clearly erroneous standard. A
finding is clearly erroneous if, after a review of the
entire record, the appellate court is left with a
definite and firm conviction that a mistake has
been made. *Id.* Second, the ultimate decision
whether to sentence the defendant as a juvenile or
an adult is reviewed for an abuse of discretion. *Id.,*
pp 103-104.

The following criteria must be considered in
deciding whether to sentence the defendant as a
juvenile or adult:

> (a) The prior record and character of the juve-
> nile, his or her physical and mental maturity, and
> his or her pattern of living.
> (b) The seriousness and the circumstances of the
> offense.
> (c) Whether the offense is part of a repetitive
> pattern of offenses which would lead to 1 of the
> following determinations:
> (i) The juvenile is not amenable to treatment.
> (ii) That despite the juvenile's potential for
> treatment, the nature of the juvenile's delinquent
> behavior is likely to disrupt the rehabilitation of
> other juveniles in the treatment program.
> (d) Whether, despite the juvenile's potential for
> treatment, the nature of the juvenile's delinquent
> behavior is likely to render the juvenile dangerous
> to the public if released at the age of 21.
> (e) Whether the juvenile is more likely to be
> rehabilitated by the services and facilities avail-
> able in adult programs and procedures than in
> juvenile programs and procedures.
> (f) What is in the best interests of the public
> welfare and the protection of the public security.
> [MCL 769.1(3); MSA 28.1072(3).]

See also MCR 6.931(E)(3). The prosecution has the
burden of proving, by a preponderance of the

evidence, that the best interests of the juvenile
and the public would be served by sentencing the
juvenile defendant as an adult. MCR 6.931(E)(2). I
believe that the prosecutor presented, by a prepon-
derance of the evidence, proofs sufficient to justify
imposition of adult sentences, that the trial court's
factual findings are clearly erroneous, and that the
trial court abused its discretion in sentencing
these defendants to the juvenile system.

GREGORY BROWN

With regard to the first factor, the trial court
found that Brown's prior record and character
presented no history of assaultive conduct. This
finding is not entirely correct, nor is it adequate.
Brown, while in the Wayne County Youth Home
for the instant offense, was involved in a fight with
Haynes and had two citations for failure to follow
directions. Brown had been placed in isolation four
times while in the youth home. Further, Brown
was on probation for a conviction of receiving and
concealing stolen property in excess of $100 when
he committed the instant offense and violated his
probation as a result of a violation of the con-
trolled substances act. Sharon Bufkin-Estes, a De-
partment of Social Services social worker, indi-
cated that Brown has sold drugs, that he was twice
suspended from school, that he was suspended
once for having a gun at school, and that he had
fights in school. Brown's mother informed Bufkin-
Estes that Brown would stay out all night to sell
drugs. Brown was expelled from the seventh grade
for fighting and failed the ninth grade because of
excessive truancy. Further, Brown had been on
probation for thirteen months when he committed
the instant offense, and his probation officer de-
scribed his adjustment as poor, because he failed

to attend school, missed two appointments with the probation officer, and had the possession with intent to deliver cocaine charge while on probation.

The evidence indicates that Brown is physically mature and his intelligence tests put him at the higher end of the borderline deficient range, but he has a high IQ level. Karen Noell Clark, Ph.D., stated that Brown accepted culpability for the crime and expressed remorse. Bufkin-Estes indicated that Brown is easily misled by a negative peer group. Shara Johnson, Ph.D., did psychological tests and stated that Brown had poor impulse control, was defiant of authority, acts out in an aggressive manner, is manipulative, had little insight into the impact of his behavior, did not accept full responsibility for his actions, and was prone to act on the basis of his own needs and seek gratification without regard to others. Contrary to the trial court's finding, this factor weighs in favor of an adult sentence.

With regard to the second factor, the trial court stated that "there is no question as to the seriousness and circumstances of this case." This finding is again inadequate. Brown's involvement in the crime included helping to drag the tree branch into the street and he yelled to get Gravel's car. All of the social workers agreed that Brown was a willing participant and knew that the young men were planning to steal a car at gunpoint. The seriousness of this crime weighs in favor of an adult sentence.

Regarding the third factor, the trial court stated that the offense was not part of a repetitive pattern of behavior, that Brown was amenable to treatment in the juvenile system, and that Brown's record in the youth home supported the conclusion that he would aid in the rehabilitation

of others. The evidence does not support these findings. As has been stated, Brown was originally placed on probation for receiving and concealing stolen property and while on probation was convicted of possession with intent to deliver cocaine. Brown was suspended from school for having a gun in school, and his mother stated that he would stay out all night and sell drugs. Although all of the social workers stated that Brown would not disrupt the rehabilitation of others in the youth home, Brown was placed in isolation four times (isolation is the most severe form of punishment at the youth home), including once for fighting. Although Brown's academic performance while in the youth home was meritorious, school attendance is mandatory, and according to probation officer Richard Kuszmar, the "choice" is to either attend school or be locked up in a room. James Lee, the assistant director at the youth home, described Brown's adjustment there as "very satisfactory," despite the fact that Brown had been placed in isolation four times. Therefore, although Brown may have the potential for treatment in a highly structured environment, there is certainly evidence that his behavior in the youth home would disrupt (and has disrupted) the rehabilitation of others.

With regard to the fourth factor, the trial court found that Brown would not be a danger to society if released at the age of twenty-one. Probation officer Michael Leskowski recommended that Brown be incarcerated in the adult system. Probation officer Richard Kuszman recommended that Brown be incarcerated in the adult system and stated that Brown would not be rehabilitated by the age of twenty-one. Dr. Clark stated that the chances were very good that Brown would be rehabilitated by the age of twenty-one. Bufkin-

Estes recommended that Brown be placed in a
maximum security juvenile facility and stated that
it would be "possible" that Brown would not be a
danger to society when released at twenty-one. Dr.
Johnson recommended that Brown be placed in a
maximum security juvenile facility, but, because
she had not seen Brown since May 1990, she could
not say if Brown would pose a danger to society if
released at twenty-one. Considering the conflicting
recommendations, this factor appears to be neu-
tral.

With regard to the fifth factor, the trial court
found that Brown was more likely to be rehabili-
tated in the juvenile system. There was evidence
to support this finding. However, Bufkin-Estes,
who recommended placement in a juvenile facility,
conceded that she was not familiar with the adult
system. Further, there was evidence that Brown
could attend educational classes and therapy in
the adult system as well.

Regarding the sixth factor, the trial court found
that juvenile placement would be in the best inter-
ests of the public welfare and the protection of
public security. This finding is inadequate. I be-
lieve the trial court erred in failing to state its
factual findings concerning why juvenile place-
ment would be in the best interests of the public
welfare and the protection of society. MCR
6.931(E)(4).

Given that the majority of the factors actually
weigh in favor of an adult sentence, I would find
that the trial court abused its discretion in sen-
tencing Brown as a juvenile. The trial court's
findings are inadequate and are generally contrary
to the evidence presented.

### WILLIE HOBBS

Regarding the first factor, the trial court found

that Hobbs' prior record and character presented no history of assaultive conduct. This finding is not correct. Hobbs had been placed on probation on October 13, 1989, for possession of cocaine. Hobbs and his brother were in possession of forty rocks of crack cocaine. Hobbs claimed he was simply transporting drugs for money for living expenses. He was not attending school while on probation, but did meet with his probation officer. Hobbs repeated the ninth grade for failure to attend and had two suspensions for fighting and one exclusion for excessive absenteeism. Hobbs was placed in isolation nine times while in the youth home for injuring fellow residents, assaulting residents, fighting, and kicking property.

Veronica Madrigal, Ph.D., stated that Hobbs is egocentric, has aggressive tendencies, is impulsive, is extremely ill-equipped to deal with societal demands, is influenced by peers but could also be the initiator, and has no neurological dysfunction. She said that Hobbs expressed no remorse. Dr. Madrigal indicated that Hobbs was easily influenced, which made him a potential participant in criminal activity and other socially unacceptable behavior. Yet, contrary to her own findings, Dr. Madrigal also stated that Hobbs does not appear to be criminally inclined. Dr. Clark indicated that Hobbs was remorseful and had accepted culpability for his actions. Hobbs was embroiled with a very hostile, dangerous, and violent group of young men who had consciously and deliberately planned to steal a car at gunpoint. Gwendolyn Bibb, a DSS delinquency social worker, found Hobbs to be physically mature but mentally immature. Bibb found Hobbs to be impulsive, preoccupied with pleasing his friends, had impaired reasoning skills, responded negatively to challenges, and failed to

consider the consequences of his actions. According
to probation officer George Malik, Hobbs did not
express any remorse. This factor weighs in favor of
the adult sentence.

Regarding the second factor, the trial court
merely stated that "there is no question as to the
seriousness and circumstances of this case." While
true, this finding is again inadequate. All of the
evidence indicated that Hobbs was a willing and
active participant in this crime. Hobbs acted as a
lookout for the group, knew that the group was
armed, and knew that the goal was to steal a car
at gunpoint. This factor weighs in favor of an
adult sentence.

Regarding the third factor, the trial court found
Hobbs to be amenable to treatment. However, the
evidence was that Hobbs was isolated nine times
while in the youth home for injuring fellow resi-
dents, assaulting residents, fighting, and kicking
property. Dr. Clark believed that Hobbs was ame-
nable to treatment, that he possessed the intellec-
tual and emotional capacity for insight to change
his behavior, and that he would be more appropri-
ately placed with his age peers. Yet, Hobbs' behav-
ior in the youth home appears to contradict the
testimony that he was amenable to treatment and
that he would not disrupt others while in the
youth home. In the face of such contradictory
evidence, this factor weighs in favor of the adult
sentence.

Regarding the fourth factor, the trial court
found that Hobbs was not likely to be a danger to
the public if released at the age of twenty-one.
There was a great deal of conflicting testimony on
this factor. Dr. Madrigal indicated that if Hobbs
was released from a juvenile facility, he would
return to his mother, who had had very little
ability to manage him. Bibb said she was unable to

predict if Hobbs could be completely rehabilitated by the age of twenty-one. Malik recommended an adult sentence because of the seriousness of the crime, the fact that Hobbs was on probation when he committed the instant offense, and the fact that the group had shot at a car earlier in the evening. Malik further stated that incarceration in the adult system would give Hobbs a longer period of confinement to mature. Only Dr. Clark testified that Hobbs would be able to be rehabilitated and would pose no threat to society upon release at age twenty-one. At best, this factor may be neutral.

Regarding the fifth factor, there was evidence to support the trial court's finding that Hobbs was more likely to be rehabilitated in the juvenile system. However, Dr. Madrigal indicated that the prognosis for modification of Hobbs' behavior pattern was "moderate"; i.e., that there was approximately a sixty percent chance that Hobbs would be rehabilitated in a maximum security juvenile facility.

With regard to the last factor, the trial court merely stated that juvenile placement would be in the best interests of the public welfare and the protection of the public security. Once again, this "finding" merely tracks the statutory language and contains no findings of fact or law. MCR 6.931(E)(4).

On this evidence, the prosecution, by a preponderance of the evidence, presented proofs sufficient to justify imposition of an adult sentence. MCR 6.931(E)(2). The trial court's findings are largely inadequate and contrary to the actual evidence presented, as are the conclusions of the social workers and psychologists. As this Court noted in *People v Haynes,* 199 Mich App 593, 599; 502 NW2d 758 (1993), the trial court has merely stated its conclusions concerning each factor in language

nearly identical to the statute without making the necessary supporting findings from the evidentiary record. I, therefore, definitely and firmly am convinced that the trial court's factual findings are clearly erroneous. Moreover, the majority's conclusory statement, without citing any evidence and with no analysis, that codefendants Haynes' and Miller's prior records and postarrest behavior were considerably more egregious than these two defendants is skewed and contradictory to the actual evidence presented.

Accordingly, I would reverse and remand to the trial court for imposition of adult sentences.