# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* NAY'ONN GRAY, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

       Petitioner-Appellee,

v

NAY'ONN GRAY,

       Respondent-Appellant.

UNPUBLISHED
March 17, 2015

No. 319283
Wayne Circuit Court
Family Division
LC No. 11-502204-NA

---

Before: BOONSTRA, P.J., and SAWYER and O'Connell, JJ.

PER CURIAM.

Respondent appeals by right two orders of disposition referring him to Wayne County Children & Family Services for placement and care. Following two bench trials, the trial court found that respondent, a juvenile, was responsible for trespass, MCL 750.552, and possession of a weapon in a weapon-free school zone, MCL 750.237a(4). The trial court ordered that respondent be placed with Wayne County Children & Family Services, with a determination of services by the Juvenile Assessment Center, with regard to both the trespass adjudication and the possession of a weapon in a weapon-free school zone adjudication. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from two separate incidents. The first incident occurred on October 19, 2012, at Annapolis High School in Dearborn Heights, Michigan. On the day of the incident, respondent arrived at school, although he had been suspended the day before. Andrew Scott, the principal of the school, explained that when a student is suspended, the student is not allowed on school property. Scott could not recall at trial the reason for respondent's suspension.

Scott informed respondent that he had been suspended and asked respondent to leave. Respondent refused to leave and questioned why he could not stay at school. Respondent asked to use the telephone; Scott told respondent he would dial a number for him. However, respondent refused. Scott told respondent that if he did not leave the school, he would be trespassing, and Scott would call the police. At some point, respondent attempted to get around Scott. Scott stepped in front of respondent, and respondent raised his hand in what Scott took as

-1-

an indication to "get out of his space." Respondent did not touch Scott. Respondent did not leave, so Scott or his assistant called the police. The police arrived, but respondent was unwilling to leave. The police officers handcuffed respondent and took him from school grounds.

The second incident occurred on April 26, 2013. At approximately 5:30 p.m. or 6:00 p.m., several young people, including respondent, became involved in a fistfight at Pardee Elementary School in Dearborn Heights, Michigan. Several of the youths saw respondent holding or pointing a dark colored gun. A police car drove past the scene of the altercation. According to two witnesses involved in the fight, respondent threw the gun on top of the elementary school. Dearborn Heights Police Corporal Jeff Colon also saw someone throw something onto the roof of the elementary school. He found respondent hiding in the shipping and receiving area of the school. The police found a black and silver plastic "BB" handgun on the roof of the elementary school. Another black "BB" handgun was recovered somewhere on the grounds of the elementary school the next day.

With regard to the first incident in this case, the prosecution brought a petition against respondent on January 22, 2013, alleging trespass, MCL 750.552, assaulting, battering, resisting, obstructing, or opposing a police officer, MCL 750.81d(1), and disturbing schools, Dearborn Heights Ordinances, § 20-358. The latter two allegations were dismissed by the trial court at trial. With regard to the second incident, the prosecution brought a petition against respondent on September 11, 2013, alleging that respondent committed two counts of felonious assault, MCL 750.82, use or possession of a BB handgun by a minor, MCL 752.891, possession of a weapon in a weapon-free school zone, MCL 750.237a(4), and trespassing or loitering on school property, Dearborn Heights Ordinances, § 20-357. The allegations of felonious assault, trespassing or loitering on school property, and use or possession of a BB handgun by a minor were dismissed by the court at trial.

During a trial proceeding on the first petition on September 23, 2013, the trial court ordered a Clinic for Child Study evaluation to aid the trial court in determining the proper disposition of the trespass adjudication. In a report signed on October 18, 2013, the Juvenile Assessment Center (JAC) recommended that respondent be placed on probation. The report was written before the trial on the petition regarding the incident at the elementary school, and, therefore, did not take into account respondent's possession of a BB handgun in a weapons-free school zone adjudication. The report also recommended that respondent receive counseling, "engage in prosocial activities," participate in a mentoring program, receive tutoring in certain areas, attend school, and receive advocacy from school programs.

The dispositional hearing on both petitions occurred after the trial proceeding on the second petition on November 4, 2013. The trial court found relevant the fact that respondent had been suspended from school on October 18, 2012, which was one day before the first incident and five or six months before the second incident. The court also noted that respondent had received and completed probation in an unrelated incident. The trial court noted that, although the JAC report recommended probation, the report did not take into account the incident that had taken place at Pardee Elementary School. The court explained that the fact that respondent had pulled out a BB handgun during a fight could be distinguished from a situation in which he merely possessed a BB handgun. The court noted that the BB handgun looked like a real gun.

The trial court explained that respondent needed "more of a wake up call than probation will provide" and that respondent was on a pathway that would lead to prison. The trial court stated:

> I want you to -- I want you to rewrite -- I want you to get out of that [school to prison] pipeline right now. And so, you know, it is my humble opinion that you do need to be in a residential placement at this time, all right. And I want you to recognize that I view this as an opportunity for you to just really get the most serious wake-up call and to get yourself -- and to totally transform yourself.

The court ordered that respondent be referred to a residential placement facility. He explained that he wished for respondent to become successful and productive, and for respondent to take responsibility for his life.

## II. STANDARD OF REVIEW

This Court reviews a trial court's order for residential placement for an abuse of discretion. See MCL 712A.18; *In re Ricks*, 167 Mich App 285, 295; 421 NW2d 667 (1988); *In re Scruggs*, 134 Mich App 617, 621-622; 350 NW2d 916 (1984). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Hughes*, 306 Mich App 116, 122; 855 NW2d 209 (2014) (citations and quotation marks omitted). Additionally, this Court reviews a trial court's findings of fact during a dispositional hearing for clear error. *People v Brown*, 205 Mich App 503, 504-505; 517 NW2d 806 (1994). This Court will reverse a trial court's finding of fact only if "this Court is left with a definite and firm conviction that a mistake has been made." *Id*. at 505.

## III. RESIDENTIAL PLACEMENT

Defendant argues that the trial court abused its discretion when it committed respondent to residential placement. We disagree.

MCL 712A.18(1) provides the trial court with discretion to enter an order of disposition that is "appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained," and lists several different options for the order of disposition. MCL 712A.18(1)(e) provides, in part:

> Except as otherwise provided in this subdivision, [the court may] commit the juvenile to a public institution, county facility, institution operated as an agency of the court or county, or agency authorized by law to receive juveniles of similar age, sex, and characteristics. If the juvenile is not a ward of the court, the court shall commit the juvenile to the department of human services or, if the county is a county juvenile agency, to that county juvenile agency for placement in or commitment to such an institution or facility as the department of human services or county juvenile agency determines is most appropriate, subject to any initial level of placement the court designates.

MCR 3.943(E)(1) provides, "If the juvenile has been found to have committed an offense, the court may enter an order of disposition as provided by MCL 712A.18." MCR 3.943(E)(2) provides, in part:

In making *second and subsequent dispositions* in delinquency cases, the court must consider imposing *increasingly severe sanctions*, which may include imposing additional conditions of probation; extending the term of probation; imposing additional costs; *ordering a juvenile who has been residing at home into an out-of-home placement*; ordering a more restrictive placement; ordering state wardship for a child who has not previously been a state ward; or any other conditions deemed appropriate by the court.  [Emphasis added.]

The trial court did not abuse its discretion when it referred respondent to Wayne County Children & Family Services for placement and care.  With regard to the incident at respondent's high school, respondent trespassed on school property and refused to obey Principal Daniel Scott's order to leave the high school even though he had been suspended.  During the incident at the elementary school, respondent pulled out a BB handgun during a fistfight and waived the BB handgun around.  The trial court noted that the fact that respondent pulled out a BB handgun during a fight could be distinguished from a situation in which he merely possessed a BB handgun since the incident occurred during a fight, and a BB handgun looks like a real handgun.  In addition, as noted by the trial court, respondent was suspended from school on October 18, 2012, which was one day before the first incident and five or six months before the second incident.  Respondent had also recently been on probation for an unrelated incident.  The trial court noted that respondent's behavior during the incidents, his probation, and his suspension from school all indicated that he was on a pathway to prison, and the trial court wished to save respondent from that fate.  The trial court's decision was not an abuse of discretion since the record indicated that respondent had engaged in a repetitive pattern of breaking the law and ignoring authority.  See MCL 712A.18(1).  Furthermore, this case constituted a subsequent disposition since respondent had been placed on probation in an earlier case.  See MCR 3.943(E)(2).  Thus, the trial court had the discretion to enter an increasingly severe sanction, including residential placement.  See *id*.

Respondent argues that the JAC report in this case recommended probation.  However, the trial court took the report into consideration in entering the orders of disposition and noted that the report did not take into account the incident that took place at the elementary school.  The trial court considered both incidents when it determined that respondent would be referred to Wayne County Children & Family Services for placement and care.  Respondent also points out in his brief on appeal that the prosecution filed multiple petitions against him, the majority of which were dismissed.  However, there is no indication that the number of petitions that the prosecution filed against respondent influenced the trial court's decision, and the trial court explained its reasons for ordering placement on the record.  For the reasons stated above, the trial court's decision was not an abuse of discretion.  See MCL 712A.18(1); MCR 3.943(E)(2).

Affirmed.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Peter D. O'Connell

-4-