*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In* M. C., III, Minor.

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Petitioner-Appellee,

v

M. C., III, Minor,

　　　　　Respondent-Appellant.

UNPUBLISHED
January 7, 2020

No. 346823
Oakland Circuit Court
Family Division
LC No. 2018-861693-DL

Before: MURRAY, C.J., and SAWYER and GLEICHER, JJ.

PER CURIAM.

Respondent appeals as of right the order of disposition committing him to a full Children's Village program. Respondent pleaded responsible to malicious destruction of property (MDOP), MCL 750.377a(1)(c)(*i*) (valued at $200 or more, but less than $1,000), and the court adjudicated respondent responsible for aggravated assault, MCL 750.81a. Respondent argues that there was insufficient evidence to adjudicate him responsible for aggravated assault, and that this adjudication was contrary to the great weight of the evidence.[1] We affirm the adjudication of responsibility for aggravated assault.

## I. FACTS

This case arises from two separate incidents. The MDOP charge is derived from an incident in which respondent broke a car window. Respondent pleaded responsible for the MDOP charge. The aggravated assault charge stems from an incident at the Southfield High School for the Arts and Technology (Southfield A&T).

---

[1] Respondent has dismissed his argument that the trial court abused its discretion in ordering a residential placement in Children's Village.

-1-

During lunchtime, CC walked down the hallway toward his next class and was tripped by another student, KR. CC stopped walking and returned to face KR near the side of the wall. KR grabbed CC by his coat and pushed him into the locker banks, where CC hit his head. KR then dragged CC from the locker banks back to the floor on the opposite wall.

Once CC fell to the ground, several students who had been walking down the hallway rushed forward and surrounded him, including SC and DJ. SC, DJ, and KR stomped and kicked CC as he lay on the floor. Surveillance footage captured the incident, showing that respondent moved to the group of students surrounding CC, made one quick forward move toward CC, and then backed away toward the opposite locker bank. CC had a concussion as a result of the incident, and continued to have trouble sleeping and headaches for several months after.

Students who witnessed the incident gave conflicting testimony regarding respondent's involvement. DR saw respondent punch CC before he fell, when CC was standing up against the lockers, but did not see any of the fight when CC was on the ground. AB saw respondent step on CC. AB testified that only KR and respondent—not DJ and SC—were involved in the fight. CB first saw respondent away from the scene. CB saw respondent approach the scuffle in what appeared to be an attempt to break up the fight, as respondent "leaned over" and "reach[ed] his hands in like to pull them away and then like he was trying to break it up." CB testified that respondent did not strike, hit, or kick anyone.

Delores Michelle Starks, the ninth-grade administrator for Southfield A&T, testified that respondent was later suspended by the school as a result of the statements taken after the incident, and not because of the surveillance footage.

Two petitions, one for aggravated assault, MCL 750.81a, and another for MDOP, MCL 750.377a(1)(c)(*i*) (valued at $200 or more but less than $1,000), were both authorized on March 21, 2018 in Oakland Circuit Court.

The trial court held a rescheduled bench trial on the aggravated assault charge, and a pretrial conference on the MDOP charge. Respondent pleaded responsible for the MDOP charge, and the trial court found respondent responsible for the aggravated assault charge.

## II. DISCUSSION

Respondent argues that there was insufficient evidence to adjudicate him responsible for aggravated assault, and that the adjudication was contrary to the great weight of the evidence.

### A. PRESERVATION AND STANDARD OF REVIEW

In evaluating a challenge to the sufficiency of the evidence, this Court reviews the evidence de novo to assess whether a rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). Evidence is examined in the light most favorable to the prosecution. *Id*. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*. Circumstantial evidence and reasonable inferences derived from such

-2-

evidence may constitute sufficient proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). This Court will reverse a trial court's finding of fact only if "this Court is left with a definite and firm conviction that a mistake has been made." *People v Brown*, 205 Mich App 503, 505; 517 NW2d 806 (1994).

To preserve this issue, a respondent must raise the argument that a conviction is not supported by the great weight of the evidence in a motion for a new trial. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). Respondent did not raise this issue in a motion for a new trial, so the issue is unpreserved. Generally, "[a]n appellate court will review a properly preserved great-weight issue by deciding whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). This Court reviews unpreserved arguments that the verdict is against the great weight of the evidence under the plain error standard. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 763. Reversal is only warranted when a plain error led to the conviction of an innocent defendant or when a plain error affects the "fairness, integrity or public reputation of judicial proceedings" generally. *Id*. at 763 (quotation marks omitted), quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

## B. INSUFFICIENT EVIDENCE AND GREAT WEIGHT OF THE EVIDENCE

Respondent argues that the evidence was insufficient to adjudicate him responsible for aggravated assault because the trial court relied solely on the surveillance footage in determining that respondent hit and kicked CC, and that footage does not depict respondent making physical contact with CC.

Aggravated assault occurs when: (1) the respondent committed an assault without a weapon, (2) the respondent inflicted a serious or aggravated injury, and (3) the respondent did not have the intent to commit murder or to inflict great bodily harm. MCL 750.81a(1); see also *People v Brown*, 97 Mich App 606, 610-611; 296 NW2d 121 (1980). "An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). "[W]hen one attempts an intentional, unconsented, and harmful or offensive touching of a person, one has committed an assault." *Id*. Mere presence at the scene of the crime, even with knowledge that a crime is being or will be committed, is insufficient to designate one as guilty of that crime. *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999).

Respondent specifically alleges that he did not kick or punch CC, and thus did not commit a harmful or offensive touching of CC, because the surveillance footage shows respondent was only present at the scene of the assault. According to respondent, the surveillance footage only depicts him standing against the wall, briefly bending over the fight, and then backing away. Therefore, respondent claims that there was insufficient evidence to adjudicate him as responsible for the assault.

-3-

This Court reviews factual findings for clear error. *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018); see MCR 2.613(C). A factual finding is clearly erroneous if "the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citations omitted). Reviewing courts will give less deference to the factual findings of trial judges than to those of juries, but the trial court's findings still have great weight. *People v McSwain*, 259 Mich App 654, 682-683; 676 NW2d 236 (2003). "[A]ppellate courts need not refrain from scrutinizing a trial court's factual findings, nor may appellate courts tacitly endorse obvious errors under the guise of deference." *Id*. at 683 (quotation marks and citation omitted).

The trial court's factual finding that the surveillance footage depicted respondent as punching and kicking CC was in part clearly erroneous. The video footage does not reveal any evidence that respondent punched CC, but we are not left with a definite and firm conviction that the trial court's conclusion that respondent kicked CC was a mistake. In the video respondent is seen leaning against the wall for the entirety of the first portion of the fight. When respondent moved away from the wall toward the location of the altercation in the center of the hallway, CC was visibly on the ground. To punch CC with his hands, respondent would have had to significantly bend down and move past the two students who were standing between respondent and CC, but his arms were instead at his waist the entire time. To conclude from this footage alone that respondent punched CC was clearly erroneous.

However, the same footage shows that respondent could have kicked CC during that time. Although respondent remained near the location of the fight for fewer than two seconds before he backed away toward the opposite locker banks, when he initially approached CC it appears that he moved his lower extremities toward CC, which could have been a quick and brief kicking motion.[2] Therefore, we are not left with a definite and firm conviction that the trial court made a mistake in finding that respondent kicked CC.

We emphasis that our review has been limited to review of the video footage compared to the trial court's findings, as the trial court made clear it was only relying on that video evidence. The trial court stated at several instances throughout the proceedings—including during the statement of its findings—that it focused exclusively on the contents of the surveillance footage in its adjudication of responsibility:

> And so the only question is whether or not you participated. And the thing about this trial, which, after 28 years I find refreshing, is I don't have to really depend on any testimony from anybody in this particular trial. All I needed was somebody to tell me what you look like on the DVD. When somebody identifies you on the DVD, then I can put it on . . . I can see the kicking and I can see the hitting and you did. I saw it.
>
> Ms. Starks, in fact, identified what you had on that day, I saw what you did because I did it frame by frame. So, I don't need any of the other testimony

---

[2] See specifically, the video surveillance footage at 12:21:54.238-381.

-4-

that was here, that was put forth, I saw—saw it myself, so I am finding you guilty as charged in this matter . . . .

While not in respondent's statement of the issue, respondent further contends in his brief on appeal that the adjudication of responsibility should be reversed because it was against the great weight of the evidence. "[W]hether the evidence was sufficient to sustain a conviction and whether the verdict was against the great weight of the evidence are two separate questions." *People v Brown*, 239 Mich App 735, 746 n 6; 610 NW2d 234 (2000). "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Musser*, 259 Mich App at 218-219. For the reasons already articulated, it is not a miscarriage of justice to allow the adjudication to stand. The video footage could be viewed as showing respondent quickly kicking CC while CC was on the ground. In addition, although the trial court did not rely on testimony in rendering its decision, the testimony of DR and AB support the conclusion that respondent was directly involved in the assault, and further defeats respondent's great weight argument. Therefore, the adjudication was not contrary to the great weight of the evidence.[3]

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Elizabeth L. Gleicher

---

[3]Respondent's adjudication of responsibility could also have been premised on a theory of aiding and abetting the assault. Under an aiding and abetting theory, one who procures, counsels, aids, or abets in the commission of a crime may be convicted as a principal. *People v Robinson*, 475 Mich 1, 5-6; 715 NW2d 44 (2006). To convict under an aiding and abetting theory, the prosecutor must demonstrate, in part, that "the defendant performed acts or gave encouragement that assisted the commission of the crime." *Id*. at 6 (quotation marks omitted), quoting *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004), quoting *Carines*, 460 Mich at 768. The amount of advice, aid, or encouragement provided is immaterial so long as the respondent provided assistance that has the effect of inducing the crime. *Moore*, 470 Mich at 71. The evidence that respondent assisted in the commission of the assault when he kicked CC after CC was tripped also supports the adjudication of responsibility on a theory that respondent aided or abetted in the commission of the assault.