*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* DIEHL, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellant,

V

T J DIEHL,

        Respondent-Appellee.

FOR PUBLICATION
September 19, 2019
9:10 a.m.

No. 345672
Oakland Circuit Court
Family Division
LC No. 2017-855352-DL

---

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

K. F. KELLY, J.

The prosecution appeals as of right the trial court's order "unauthorizing" two juvenile delinquency petitions, alleging that respondent committed domestic violence, MCL 750.81(2), and larceny in a building, MCL 750.360—both of which are offenses defined in section 31(1)(g) of the Crime Victim's Rights Act (CVRA), MCL 780.781, *et seq.*—and removing those petitions from the adjudicative process. We affirm the trial court's order, but remand this case to the trial court to complete the ministerial tasks of (1) assigning separate petition numbers to each of respondent's three juvenile delinquency petitions, and (2) placing the separate petition numbers on all documents within respondent's case file that are related to each petition.

## I. BASIC FACTS

This case arises out of three juvenile delinquency petitions issued by the prosecution against respondent. The first petition, dated July 24, 2017, alleged that respondent committed domestic violence against his adoptive mother, Diehl. Specifically, respondent was then 12-years old and had resided with Diehl since he was eight years of age. On July 23, 2017, respondent's biological sister was visiting the family, but abruptly decided to end her visit. This caused respondent to scream at his sister, but respondent's brother called from California and

-1-

was able to calm respondent down. Hours later, respondent wanted to read the newspaper, but Diehl told him that it was time to go to sleep. This caused respondent to become enraged, and he began to throw objects. Diehl went outside and called 911. The police photographed injuries to Diehl, but she attributed her bruises to a prior fall and an unspecified medical condition. Moreover, she opined that respondent did not intend to throw objects at her. The first petition was authorized after a preliminary hearing,[1] and respondent was released into Diehl's custody with the condition that Diehl arrange counseling for respondent.

Two days after respondent was released into Diehl's custody, however, a second petition dated July 26, 2017, issued, alleging that respondent committed another act of domestic violence against Diehl. Specifically, the police[2] were called by Diehl's neighbor who reported that respondent struck Diehl, causing her to fall to the ground and then continued to kick her. Diehl reportedly told the officers that respondent was agitated about attending court-ordered therapy and began to swing a bag. Although she denied being punched, Diehl reportedly admitted to the responding officers that respondent pushed her, causing her to fall to the ground. Following this preliminary hearing, the second petition was authorized. With regard to placement, it was noted that respondent was a good student with no disciplinary issues at school. It was determined that respondent would remain in custody until a pre-trial was held. Pursuant to respondent's judge demand, the case was assigned to Oakland County Family Court Judge Victoria Valentine for its duration.

On August 8, 2017, a hearing was held before Judge Valentine. Respondent entered a plea of no contest to the domestic violence charge in the first petition.[3] Respondent did not enter a plea to the domestic violence charge in the second petition at that time. With regard to the second petition, it was requested that the matter be set for trial with discovery occurring in the interim. Respondent's counsel requested that "the prosecutor . . . consider dismissing the second [petition] since the Court will already have jurisdiction after you accept the plea." The prosecutor agreed that he would send respondent's counsel the necessary discovery and contemplate the dismissal of the second petition. When addressing services, Louise Strehl of Casework Services,[4] requested an evaluation before respondent was returned home because of

---

[1] Under MCR 3.935(A)(1), a "preliminary hearing" must occur with 24 hours of the juvenile being taken into custody. On the other hand, when a petition is not accompanied by a request to detain the juvenile, the court may conduct a "preliminary inquiry" to determine how to proceed with allegations in a petition. MCR 3.932(A).

[2] A detective testified to the substance of the police run because the responding officers were in training.

[3] The police report served as the foundation for the no contest plea because respondent did not have an independent recollection of the event.

[4] Casework Services is the division responsible for authorized delinquency cases in Oakland County. The entity is available before the filing of petitions to provide community based resources and to make recommendations regarding disposition to address both the needs of the child and the protection of the community. They monitor compliance and report to the court on a

the volatile relationship with his mother. Diehl preferred to bring respondent home and get him help and therapy, "not jail." She stated that respondent "was a little boy who has spent half of his life being abused, and something set him off that weekend, . . . [b]ut before that, he had never had an incident." Diehl further stated that although respondent had been opposed to therapy, his time spent at Children's Village caused him to realize the importance of it. The trial court ordered placement to continue at Children's Village with a psychological evaluation to occur within seven days.

On September 1, 2017, a disposition hearing was conducted on the first petition. At the hearing, respondent's counsel expressed that, despite his 40 years of practice, he "was appalled and beyond angry" to learn of "what took place when [respondent] lived with his biological parents." Although respondent had the right to be angry, he had learned of the need to find methods to address his anger. Respondent's counsel again asked the prosecutor to consider dropping the second petition, but acknowledged "that's a prosecutorial decision." The prosecutor agreed to discuss the second petition, but first addressed his reservations regarding the recommendation by Casework Services. Specifically, he requested an adjournment of disposition to allow the out-of-home screening committee to evaluate the case in light of the prior violence in the home and questioned whether Diehl would report the violence if it recurred. Strehl, of Casework Services, stated that if she felt the case needed to be presented to the committee, she would have done so. Strehl opined that supervising respondent in the community would allow her the opportunity to understand the relationship between him and Diehl, and she would report her concerns to the court and the committee if necessary. With respondent scheduled to start school, Strehl would engage in community monitoring by meeting with the school's social worker and counselor as well as monitor respondent's therapy to learn of signs of trouble in the family home. Respondent's medication had been changed while he was placed in Children's Village, yet he had not required recent physical management there. Strehl credited respondent's lack of physical involvement, noting that Children's Village was a stressful environment and children would incite others to get into trouble.

Diehl also offered that respondent's violent reaction was triggered by his sister who mentioned that parents could rescind an adoption and that caused him to fear it would happen to him. She assured the court that resources, including therapy, were in place to prevent an incident of that magnitude from recurring, and she would comply with any court orders. In response to questioning by the court, respondent indicated that he would deal with anger in a different way, by using a stress ball or coloring, and he now wanted to attend counseling. Respondent stated that Diehl taught him math at a twelfth grade level even though he was only in seventh grade, and he would like to be an engineer. The court adopted the recommendation for standard probation, attend counseling, attend school, remain on prescription medication, and release to

regular basis. "Unlike with adult courts, there are no fixed sentences in the Family/Juvenile Court. Recommendations from Casework Services, and the resulting court orders decided upon by a referee or judge, involve choosing from among the many programs, services and creative solutions, and consequences available." <https:\\www.oakgov.com/courts/circuit/family/court-services/Pages/juvenile-casework.aspx> (accessed September 5, 2019).

Diehl. The prosecutor never stated his position on the record regarding the second petition. However, the trial court addressed it by stating, "With regard to his additional charge, I'll allow you to determine how you're going to handle that, if you want that in a place for safeguarding any additional behavior. I'm going to allow the child to be released." The prosecutor offered to schedule a review on this case on the date scheduled for the trial on the second petition. Further, the prosecutor agreed to provide any video or audio recordings made by the responding police officers to the alleged act of domestic violence that was the subject of the second petition.[5]

While on probation, a third petition, dated January 19, 2018, was issued, alleging that respondent committed larceny in a building by stealing money from a school teacher's purse in November 2017. This third petition was authorized after a preliminary inquiry hearing.

On January 30, 2018, the hearing commenced with the representation that respondent was prepared to enter a plea of no contest to the domestic violence offense raised in the second petition, as well as the larceny in a building offense delineated in the third petition. Prior to the taking of the plea, the prosecutor and Strehl discussed the services that should be imposed. Strehl learned from respondent's therapist that he was starting to address the trauma that occurred when he was younger, and the therapist wrote a letter forewarning that respondent may begin to react or act out because of the work occurring in therapy. Consequently, Strehl forwarded the letter to the trial court and recommended intensive probation oversight.

The trial court advised respondent of the consequences of the plea and initially accepted it. However, respondent's counsel asked to approach the bench and a six-minute sidebar conference occurred off the record.[6] After the sidebar, the trial court reconsidered its decision, took respondent's plea "under advisement," and set the matter for review a few months later.

The trial court placed its rationale for rejecting the plea on the record as follows:

---

[5] On October 17, 2017, a pretrial hearing was held. The court scheduled a review hearing on the first petition and a pretrial hearing on the second petition. All prior orders were to remain in effect.

[6] The prosecutor faults the trial court for failing to provide a transcription of this sidebar conference, citing a transcript from an unrelated criminal case before the circuit court, for the proposition that the court is responsible for eliminating sidebar discussions from the public record, but may obtain separate transcriptions of sidebar discussions. Yet, an affidavit from the court administrator or transcript services regarding the process and availability of transcripts of sidebar conversations occurring in family court was not presented. The prosecutor, as the appellant, had the duty to file with the trial court the complete transcript of testimony and other proceedings, and appellate review is limited to what is presented on appeal. *Band v Livonia Assocs*, 176 Mich App 95, 103-104; 439 NW2d 285 (1989). Curiously, although the prosecutor contends that "the impact of this sidebar forms the basis of Petitioner's appeal," there is no indication he took steps to order its preparation if it exists. Furthermore, a summation of the prosecutor's recall of the sidebar discussion is contained within a footnote of the brief on appeal, yet an affidavit from the prosecutor was not submitted.

-4-

*The Court:* So, I'm going to hold your disposition for - - when is it? April 24th, 2018, at 1:30. Okay.

And [respondent], let me tell you why. I've read the reasons why you took the money. And you were trying to help another child who was starving. And with regard to the alleged domestic violence here, we've gone through the issues with regard to your history and your past. And upon speaking with both the - - all counsel here, it's indicated that my - - I can't give more probation or more services to you than you have right now even if I sentence you in a disposition.

And so, I'm going to hold everything under advisement, we're going to send it to committee to see what a recommendation would be, and I'll determine whether or not I'm going to proceed with the accepting [of] your plea or not, okay?

*[Respondent]:* Yes, Your Honor.

*The Court:* So, I need you to understand a couple things. We're all here to help you, okay? You had a tough past, okay? But now you have a really good future. You need to trust your mom, you need to let your mom help you, you need to talk to your therapist, and you need to work through all these issues without any violence, okay, and with doing the right thing all the time. If you would have told somebody in the office that the kid didn't have lunch money, I bet you someone would have gave him some lunch money, okay? Without you having to go take it out of someone's purse, okay?

*[Respondent]:* Yes, Your Honor.

*The Court:* Okay. So, you know if your intention is to be goodhearted, that's great; you have to do it the right way.

*[Respondent]:* Yes, Your Honor.

On April 24, 2018, the hearing commenced with a summation by Strehl of Caseworker Services. She noted that the petitions for the second domestic violence and the larceny in a building[7] needed to be addressed or adjourned. Strehl stated that the larceny in a building arose from respondent's theft of money from a teacher to feed his hungry friend. Despite these new allegations, the recommendation of probation remained the same, but Strehl imposed

---

[7] The elements of larceny in a building are: "(1) a trespassory taking (2) within the confines of a building and (3) the carrying away (4) of the personal property (5) of another (6) with intent to steal that property." *People v Thorne*, 322 Mich App 340, 344; 912 NW2d 560 (2017). The court's rejection of the plea also apparently took issue with whether the elements could be established through the police report in light of respondent's motive.

consequences for the second domestic violence petition, police contact at the family home, and third petition for larceny in a building. Despite his birthday, respondent was required to attend and complete mid-course corrections, a program where he learned to be respectful, honorable, and accept his mistakes. Additionally, he completed an honors program where the staff commented on his remarkable job despite his young age. Respondent continued to participate in therapy. Therefore, Strehl recommended that respondent continue with standard probation.

Although Strehl summarized the current status of the petitions, the new prosecutor asked, "If someone could help me as to - - so I understand the procedure where we're at." The trial court advised that respondent's plea was not accepted and disposition had not occurred. The prosecutor requested that the plea be accepted, but the court denied the request. The following transpired on the record:

> *The Court:* I'm going to allow him on the path that he's on. My indication from Miss Strehl at the time was that he wouldn't be doing anything different as far as services, his services remain the same.

> He is among the youngest children that I have in front of me. Giving him two additional charges is just stacking a child's juvenile record. And so, I am holding everything in abeyance and having him get through all of his services, trying to get him on the right path. His history is - - I'm not sure if you know about it. Do you know about his history?

> *[The Prosecutor]:* No.

> *The Court:* Okay. His history is that he's been recently adopted. He had quite a horrific childhood for six years. And I think he's got to work through some of his problems. And I want to make sure we're getting him the best treatment. And I don't think that giving him a huge criminal record at age - - are you 12, you're 10?

> *[Respondent]:* Thirteen, Honor.

> *The Court:* Thirteen. You were 12 when these happened, right?

> *[Respondent]:* Yes, Your Honor.

> *The Court:* Is in the best interest of justice or this child's future.

> *[The Prosecutor]:* Okay. So, as far as the People's position, I need to request as these are formalized petitions alleging delinquency, I would ask the Court to accept his plea, and I would ask for a date of disposition to be set.

> *The Court:* Thank you; denied.

Respondent then advised the trial court that he had improved his grade in math as requested, and he participated in therapy and Tae Chi "to stay on track." A three month review was scheduled.

On June 5, 2018, the prosecutor filed a "Notice of Objection to Consent Calendar" in the court file. This pleading objected to consideration of respondent for the consent calendar, diversion, or informal status for the remaining petitions alleging domestic violence and larceny in a building. It was requested that the trial court accept respondent's plea to those offenses and proceed to disposition or schedule a jury trial for those petitions.

On July 16, 2018, a hearing was held. Again, the prosecutor requested acceptance of the plea to the second and third petitions and disposition. In response, the trial court stated,

> But the objective of the juvenile court is to ensure that we are putting procedures in place to help the children. And with regard to the two issues that we have before me now, there's no additional services that we granted, and we're really trying to work on [respondent] getting through the severe issues he's had, of no fault of his own, with regard to his past history. So, I'm not inclined just to make a record of offenses without benefit to a juvenile, especially someone as young as [respondent].

Despite the prosecutor's continued insistence on acceptance of the prior no contest plea and disposition or scheduling of the petitions for trial, Strehl testified that her recommendation for disposition would not change even if two additional offenses were added. She submitted respondent's most recent report card to the trial court, and respondent did "quite well." Additionally, respondent wrote a letter to Strehl to explain his behavior, and she submitted it to the court. Respondent was preparing to testify in Macomb County Circuit Court against his abuser, the boyfriend of his biological mother. Although the report of abuse was raised in 2015, the trial was adjourned on multiple occasions which caused respondent substantial stress. Strehl noted that respondent continued to see a therapist, engaged in trauma therapy and home-based services, passed his classes, and attended basketball camp. With regard to the petition raising larceny in the building, respondent and his mother paid restitution to the teacher whose money was stolen. Thus, Strehl requested that jurisdiction continue, respondent remain on standard probation, and all orders remain in effect. The trial court inquired whether there were services that could be provided to respondent to help address the continued adjournment of the trial of his assailant. Strehl notified the court's victim advocate of the stress the adjournments placed upon respondent and the impact it had on the delinquency proceeding.

The trial court agreed to consider the prosecutor's continued objection to procedure, but noted that its role was to dispense justice, and the goal was not to punish a child, particularly a child so young, stating:

> But the objective of the juvenile court is to ensure that we are putting procedures in place to help the children. And with regard to the two issues that we have before me now, there's no additional services that we granted, and we're really trying to work on [respondent] getting through the severe issues he's had, of no fault of his own, with regard to his past history.
>
> So, I'm not inclined to just make a record of offenses without benefit to a juvenile, especially someone as young as [respondent].

The prosecutor continued to allege that procedure was not followed, and he would not agree to proceed on the consent calendar until there was a disposition, despite learning of respondent's history of abuse. The court again noted that the effect of the prosecutor's request was to "just stack a juvenile record for a child who is going through some severe emotional issues with regards to a trial that's coming up and having to testify, I'm having a hard time balancing that with my job, which is to make sure that it's not a punishment." Although the prosecutor noted that a "warn and dismiss" might be appropriate because no additional services were being offered to respondent, the trial court acknowledged that the prosecutor's recommendation nonetheless placed additional offenses on respondent's juvenile record. The trial court continued to hold the plea in abeyance and scheduled the matter for a pretrial.

At the next pretrial hearing on July 16, 2018, the prosecutor again requested that the trial court accept respondent's plea, framing its argument as procedural, and stating that the trial court was beyond the point in which it could dispose of the second and third petitions by informal means—i.e., consent calendar, diversion, or dismissal. The trial court denied the prosecution's request, continued to take respondent's plea under advisement, and held its decision in abeyance.

In August 2018, the trial court issued a "notice to the prosecution of removal of the case from the adjudicative process," stating that the trial court planned on unauthorizing the second and third petitions and removing them from the adjudicative process. At the next pretrial hearing on September 10, 2018, the prosecution argued that the trial court's decision was not only adverse to the governing statutes and court rules, but violated the separation-of-powers doctrine. The trial court disagreed, unauthorized respondent's second and third petitions, and removed the petitions from the adjudicative process. The prosecution now appeals this decision. However, after the claim of appeal was filed, respondent successfully completed his probation and case service plan for the disposition related to the first petition. The trial court terminated its jurisdiction over respondent in December 2018.

## II. JUVENILE LAW AND APPELLATE REVIEW

The trial court's entry of an order of disposition in a juvenile delinquency proceeding is reviewed for an abuse of discretion, while its factual findings are reviewed for clear error. *People v Brown*, 205 Mich App 503, 504-505; 517 NW2d 806 (1994); *In re Scruggs*, 134 Mich App 617, 621-622; 617; 350 NW2d 916 (1984). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *In re Kerr*, 323 Mich App 407, 411; 917 NW2d 408 (2018) (quotation marks and citation omitted). This Court will reverse a trial court's finding of fact only if "this Court is left with a definite and firm conviction that a mistake has been made." *Brown*, 205 Mich App at 505. In addition, this Court reviews de novo the interpretation of statutes and court rules. *Kerr*, 323 Mich App at 411.

"The rules of statutory construction apply equally to court rules." *In re Lee*, 282 Mich App 90, 93; 761 NW2d 432 (2009). "Construction begins by considering the plain language of the statute or court rule in order to ascertain its meaning." *Patal v Patal*, 324 Mich App 631, 639-640; 922 NW2d 647 (2018). "[U]nambiguous language is given its plain meaning and enforced as written." *Id*. at 640 (quotation marks and citation omitted). "A provision in a statute is ambiguous only if it irreconcilably conflicts with another provision or it is equally susceptible to more than a single meaning." *Lee*, 282 Mich App at 93.

"In construing a legislative enactment we are not at liberty to choose a construction that implements any rational purpose but, rather, must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used." *Frost-Pack Distrib Co v Grand Rapids*, 399 Mich 664, 683; 252 NW2d 747 (1977). The legislative chapter governing juveniles plainly states it:

> shall be liberally construed so that each juvenile coming within the court's jurisdiction receives the care, guidance, and control, preferably in his or her own home, conducive to the juvenile's welfare and the best interest of the state. If a juvenile is removed from the control of his or her parents, the juvenile shall be placed in care as nearly as possible equivalent to the care that should have been given to the juvenile by his or her parents. [MCL 712A.1(3); see also MCR 3.902(B).]

Further, juvenile matters are not criminal proceedings. MCL 712A.1(2). "Juvenile justice procedures are governed by the applicable statutes and court rules, with an emphasis on rehabilitation rather than retribution." *Lee*, 282 Mich App at 99 (quotation marks, citation, and brackets omitted).

## III. TRIAL COURT'S AUTHORITY TO UNAUTHORIZE A PETITION AND REMOVE IT FROM THE ADJUDICATIVE PROCESS

The prosecution argues that the trial court abused its discretion when it unauthorized the second and third petitions and removed them from the adjudicative process without the consent of the prosecution. We disagree.

"In general, the family court has jurisdiction over juveniles within its judicial circuit that have 'violated any municipal ordinance or law of the state or of the United States.' " *Lee*, 282 Mich App at 93, quoting MCL 712A.2(a)(1). The two petitions at issue in this case (dated July 26, 2017, and January 18, 2018) contained allegations that respondent committed domestic violence against his adoptive mother, and that respondent committed larceny in a building. Both domestic violence and larceny in a building are "offenses" under the CVRA. See MCL 780.781(1)(g)(*i*), (*ii*). MCR 3.932(B) states that "[a] case involving the alleged commission of an offense listed in the [CVRA] may only be removed from the adjudicative process upon compliance with the procedures set forth in [MCL 780.786b]." MCL 780.786b(1) provides, in relevant part:

> [A] case involving the alleged commission of an offense, as defined in [MCL 780.781], by a juvenile shall not be diverted, placed on the consent calendar, *or made subject to any other prepetition or preadjudication procedure that removes the case from the adjudicative process* unless the court gives written notice to the prosecuting attorney of the court's intent to remove the case from the adjudicative process and allows the prosecuting attorney the opportunity to address the court on that issue before the case is removed from the adjudicative process. . . . As part of any other order removing any case from the adjudicative process, the court shall order the juvenile or the juvenile's parents to provide full restitution as provided in [MCL 780.794]. [Emphasis added.]

In *Lee*, 282 Mich App at 94, this Court interpreted the phrase "adjudicative process" in MCR 3.932(B) and MCL 780.786b(1). The *Lee* Court stated that, while the phrase is not defined by statute or court rule, "it is the judicial procedure that could lead to the court's fact-finding determination that the petition's allegations are true. This would constitute an 'adjudication,' analogous to a criminal conviction, that the court has jurisdiction over the juvenile under MCL 712A.2(a)(1)." *Id.*, citing former MCR 3.903(A)(27).

At the time respondent attempted to enter a plea of no contest to the charges in the second and third petitions, respondent had previously entered a plea of no contest to the domestic violence charge in the first petition, and was ordered to complete standard probation and counseling for the first petition's disposition. The trial court would not accept respondent's plea to the offenses in the second and third petitions, explaining that no additional probation, services, or programs would aid respondent in his rehabilitation, and that accepting his plea would unfairly "stack" additional adjudications onto respondent's juvenile record. Instead, the trial court took respondent's plea under advisement—which is permitted by MCR 3.941(D)—held its decision on whether to accept respondent's plea in abeyance, and ultimately decided to unauthorize those petitions and remove them from the adjudicative process. Because the trial court never accepted respondent's plea, the second and third petitions were never "adjudicated." See *Lee*, 282 Mich App at 94; MCR 3.902(A)(27). Without an adjudication, the trial court was permitted to remove the second and third petitions from the adjudicative process. *Lee*, 282 Mich App at 94; MCR 3.902(A)(27); MCL 780.786b(1).

When a new prosecutor appeared at the next hearing, it was insisted that the court must accept the no contest plea tendered at the prior hearing and proceed to disposition. Judge Valentine declined the request, instead determining that respondent should remain "on the path that he is on," because it was in the "best interest of justice," as well as in the "child's future." Judge Valentine noted that respondent was "among the youngest children" to appear before her, and she was concerned with getting him "through all of his services, and trying to get him on the right path." Because the prosecutor was new to the case, the court explained to him that respondent was only 12-years old and had suffered horrific abuse for half of his life. Consequently, he was addressing those issues, and it was the court's intent to provide him with the best treatment, and a "huge criminal record" would not serve any proper purpose.

Accordingly, although the second and third petitions may have been authorized, the trial court did not proceed to adjudicate the offenses. Specifically, during the plea proceeding, there was a bench discussion addressing the impact of the additional petitions and the recourse available in light of a no contest plea. Furthermore, there was a question regarding the police report serving as the factual basis for the larceny plea in light of respondent's purported benevolent purpose for allegedly taking the money. As noted, juvenile matters are not criminal proceedings, MCL 712A.1(2), and the purpose of juvenile justice procedure is not to punish the offender, but to ensure that the juvenile receives the care, guidance, and control necessary to serve his welfare as well as ensure the best interests of the state, MCL 712A.1(3). Judge Valentine repeatedly expressed that respondent's recommended disposition was probation, irrespective of whether he pleaded no contest to one or all three petitions, and the net result solely impacted the number of adjudications that appeared on his juvenile record. Moreover, respondent's therapist and Strehl forewarned the judge and the parties that respondent began to address his early childhood abuse in therapy and to expect that respondent would engage in

acting out behaviors as a result. Thus, Judge Valentine conducted this juvenile's proceeding in accordance with the manner the Legislature expected and directed, *Frost-Pack Distrib Co*, 399 Mich at 683, and it resulted in a successful outcome. When met with the prosecutor's repeated request to simply accept a plea and follow an expected procedure, Judge Valentine instead insisted upon a course of action designed to ensure that respondent would receive individualized beneficial services to address the underlying cause of his inappropriate behavior. That is, respondent was not treated as a habitual criminal offender, see MCL 712a.1(2), and the services were imposed with the intent of rehabilitating a young child that was acting out in an unsuitable manner when addressing an abusive childhood, MCL 712A.1(3).

The prosecution argues that the trial court lacked the authority to unauthorize validly authorized petitions and remove them from the adjudicative process. However, authorization is not the equivalent of adjudication. See MCR 3.902(A)(21) (" 'Petition authorized to be filed" refers to written permission given by the court to file the petition containing the formal allegations against the juvenile or respondent with the clerk of the court."), and MCR 3.902(A)(27) (" 'Trial' means the fact-finding adjudication of an authorized petition to determine if the minor comes within the jurisdiction of the court."). Here, respondent's second and third petitions were in-between the authorization and the adjudication stage of the juvenile delinquency proceedings. While there does not appear to be any explicit statute, court rule, or published caselaw that refers to "unauthorization" of a petition, the authorization of a petition simply means the court's written permission to file the petition containing formal allegations against the juvenile. MCR 3.902(A)(21). Where the trial court provided written notice to the prosecutor of its intent to remove the case from the adjudicative process, its choice of label for that removal is irrelevant because it nonetheless retained the authority to act on the petition in the manner that best served both the juvenile and the community. Moreover, there is also no authority prohibiting the trial court from taking such action—particularly when the juvenile is already under the trial court's jurisdiction and supervision from an earlier adjudication and disposition, as respondent was here. The trial court concluded that it was not in the best interests of either respondent or the public to add more adjudications onto respondent's juvenile record because he was already on probation from an earlier disposition, and because no additional services would be provided to him if the second and third petitions proceeded to disposition. This ruling falls within the range of reasonable, principled outcomes, and thus, it cannot be said that the trial court abused its discretion by unauthorizing respondent's second and third petitions and removing them from the adjudicative process. *Kerr*, 323 Mich App at 411.

The prosecution also contends that the trial court's reliance on MCL 780.786b(1) is erroneous because the CVRA only requires the trial court to give the prosecution notice before removing a case from the adjudicative process, and does not grant a trial court "the independent authority to dismiss or remove an already authorized delinquency petition case from the adjudicative process." It is true that MCL 780.786b(1) requires the trial court to give notice to the prosecution before conducting a "prepetition or preadjudication procedure that removes the case from the adjudicative process." However, MCL 780.786b recognizes a trial court's authority to remove a case from the adjudicative process *preadjudication*, so long as the trial court complies with certain procedural requirements. *Lee*, 282 Mich App at 95 ("The plain language of MCL 780.786b(1) contains several procedural steps that the family court must fulfill before deciding to remove from the adjudicative process a juvenile case in which it is alleged that the minor committed a CVRA offense."). Accordingly, on the basis of the plain language of

-11-

MCL 780.786b(1), the trial court was permitted to remove the second and third petitions from the adjudicative process because those petitions had not yet been adjudicated. *Lee*, 282 Mich App at 93-96.

Next, the prosecution argues that respondent had already tendered his plea of no contest to the charges in the second and third petition and that, as a result, the trial court was required to accept it and set the matter for a disposition hearing. This contention is erroneous because the trial court never actually accepted respondent's plea of no contest to the charges in the second and third petitions. "[A] court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). While the trial court initially stated that it would accept respondent's plea of no contest to the charges in the second and third petitions, it later stated—both during the hearing and in its written order—that the trial court would take respondent's plea under advisement. Moreover, the police reports provided the factual basis for the plea. The trial court expressly stated that it had reservations regarding the satisfaction of the elements for larceny in a building where respondent reportedly took money from a purse to feed a hungry classmate. Therefore, the trial court never accepted respondent's plea to the charges in the second and third petitions. *Id*.

The prosecution further contends that, under MCL 722.823(1), once the second and third petitions were authorized and filed with the court clerk, respondent "was no longer eligible to participate in the diversionary services available before the petition [was] authorized." However, the trial court did not *divert* the charges in the second and third petitions against respondent; rather, the trial court *dismissed* the charges—before adjudication—in the petitions altogether. See MCL 722.822(c) (stating that diversion occurs before a petition is authorized). Thus, MCL 722.823(1) is inapplicable to the facts of this case.

The prosecution's reliance on MCR 3.932(C)(2) is also unpersuasive. MCR 3.932(C)(2) requires that the trial court obtain the consent of the prosecution before placing a juvenile's case on the consent calendar. The trial court placed respondent's cases on the formal calendar after authorizing the second and third petitions. Then, before adjudicating the cases (through either a plea or a trial), the trial court decided to unauthorize the petitions and remove them from the adjudicative process altogether. At no point did the trial court indicate that it would place respondent's cases on the consent calendar; therefore, MCR 3.932(C)(2) is inapplicable.

### III. HARMLESS ERROR

Even if the trial court did err in unauthorizing the second and third petitions and removing the petitions from the adjudicative process, such an error was harmless. MCR 3.902(A) incorporates the harmless-error standard of civil procedure into juvenile delinquency proceedings, stating that "[l]imitations on corrections of error are governed by MCR 2.613." See *Lee*, 282 Mich App at 99-100 (acknowledging that the harmless-error analysis applies to juvenile delinquency proceedings). MCR 2.613(A) provides, in relevant part:

> [A]n error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order,

unless refusal to take this action appears to the court inconsistent with substantial justice.

The lower court record establishes that, had the trial court accepted respondent's plea to the charges in the second and third petition and proceeded to disposition, no additional probationary period, services, or programs would be recommended by respondent's case worker. In fact, the prosecution did not recommend any additional probation or services either, and even suggested that the trial court, after accepting respondent's plea, "warn" respondent and "dismiss" the second and third petitions under MCL 712A.18(1)(a)—which would do nothing more than add two additional adjudications onto respondent's juvenile record. Further, respondent's counsel indicated that respondent did not wish to proceed to a jury trial if the trial court did not accept respondent's plea. Notably, since the prosecution has filed this appeal, respondent has successfully completed his case service plan from the first petition's disposition, and the trial court has terminated its jurisdiction over respondent.

Ultimately, it would not be in the best interests of either respondent or the public to adjudicate the second and third petitions, but then not impose any additional services to rehabilitate respondent at disposition. See *Lee*, 282 Mich App at 99 (noting that courts should interpret the applicable statues and court rules governing juvenile delinquency proceedings procedures with an emphasis on rehabilitation, not retribution); MCL 712A.1(3); MCR 3.902(B)(1). Respondent's completion of his probation and case service plan from the first petition's disposition demonstrates his rehabilitation and, thus, a remand of this case to the trial court with an instruction to proceed with adjudication of the second and third petitions would be inconsistent with substantial justice. *Lee*, 282 Mich App at 99-100. Therefore, even if the trial court erred in unauthorizing respondent's second and third petitions and removing them from the adjudicative process, such an error was harmless, and reversal would be inconsistent with substantial justice and the goals of juvenile delinquency proceedings. *Id*.; MCL 712A.1(3); MCR 3.902(B)(1).

In summary, this case presented the circumstance where respondent, an adopted 12-year old juvenile with good grades, began to act out in a violent manner that was precipitated by his upcoming testimony in a criminal trial against his childhood abuser. Unfortunately, respondent's reactions were of a severity that prompted police involvement. Although the trial court authorized a petition for domestic violence for an incident between respondent and his adoptive mother, caseworker services and respondent's therapist cautioned the trial court that as respondent began to recall and confront the horrific abuse that he suffered when he was younger, he would act out. This forecast proved to be true, and it was the prosecutor's choice to reduce his acting out behavior to offenses that became the subject of multiple petitions. However, the trial judge also was charged with applying the juvenile law in accordance with its expressed purpose, to ensure that the juvenile received care, guidance, and control in the environment conducive to the child as well as the state's interest. MCL 712A.1(3). To assist the judge in its decision making, respondent's attorney as well as caseworker services examined the circumstances that would best equip respondent with the means to address his prior abuse. The caseworker noted that she could not provide additional services in relationship to each offense that was the subject of a petition. To that end, Judge Valentine noted that the continued adjudication of petitions would merely serve to provide respondent with a history of offenses, and the purpose of juvenile intervention, to rehabilitate in lieu of punishment, would not be

served. The Legislature provided the court with the mechanism to address a juvenile's adjudications in a manner best suited to the juvenile's circumstances and needs, MCL 780.786b, and the learned trial judge applied its provisions to best suit the needs of the child and the state.

### III. SEPARATION-OF-POWERS DOCTRINE

The prosecution argues that the trial court violated the separation-of-powers doctrine by unauthorizing the second and third petitions and removing them from the adjudicative process without proper authority and without the prosecution's consent. We disagree.

"[W]hether a violation of the separation of powers doctrine has occurred is a question of law that this Court reviews de novo." *Martin v Murray*, 309 Mich App 37, 45; 867 NW2d 444 (2015) (quotation marks and citation omitted).

The separation-of-powers doctrine is set forth in Const 1963, art 3, § 2, which states:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

However, the separation-of-powers doctrine does not mandate complete separation, and overlap between the functions and powers of the branches is permissible. *People v Conat*, 238 Mich App 134, 146; 605 NW2d 49 (1999). "Rather, the evil to be avoided is the accumulation in one branch of the powers belonging to another." *Id*. In criminal cases, a trial court possesses the "power to hear and determine controversies," while "the decision whether to bring a charge and what charge to bring lies in the discretion of the prosecutor." *Id*. at 147, 149.

The governing statutes and court rules permit a trial court to remove a case from the adjudicative process before an adjudication is entered, which is precisely what occurred here. *Lee*, 282 Mich App at 94, citing MCL 780.786b; see also MCR 3.932(B) ("A case involving the alleged commission of an offense listed in the [CVRA] may only be removed from the adjudicative process upon compliance with the procedures set forth in [MCL 780.786b].") Moreover, the trial court's removal of the second and third petitions from the adjudicative process was in conformity with the ultimate goal of juvenile delinquency proceedings, which is to provide services to minor children to aid them in the rehabilitation process. *Lee*, 282 Mich App at 99. Accordingly, the trial court did not violate the separation-of-powers doctrine.

The prosecution relies on *People v Smith*, 496 Mich 133, 141-142; 852 NW2d 127 (2014), in arguing that the trial court impermissibly "stepped into the role of the prosecutor and, without a scintilla of valid legal authority, dismissed these two cases" in violation of the separation-of-powers doctrine. In *Smith*, our Supreme Court reversed a trial court's dismissal of a criminal case after the defendant pleaded to the charges, holding, in relevant part:

> Without citing a scintilla of legal authority, the trial court *dismissed* the case over the objection of the prosecutor. Aside from flagrantly ignoring contrary Court of Appeals precedent in entirely dismissing the case, the trial court usurped the prosecutor's role in violation of the separation of powers principles contained

in our constitution. It is axiomatic that the power to determine whether to charge a defendant and what charge should be brought is an executive power, which vests *exclusively* in the prosecutor. The trial court had no legal basis to trump the prosecutor's charging decision, much less dismiss the case *after* the defendant had pleaded to the charge and had never sought to withdraw his plea. [*Id*. at 140-141.]

The prosecution's reliance on *Smith* is unpersuasive. Whereas the defendant in *Smith* actually pleaded guilty to the criminal charge against him, the trial court took respondent's plea to the charges in the second and third petitions under advisement and never accepted respondent's plea of no contest. *Id*. Thus, unlike *Smith*, no adjudication occurred in this case, and the trial court was permitted to remove the second and third petitions from the adjudicative process without respondent having tendered a plea. *Lee*, 282 Mich App at 94; MCL 780.786b; MCR 3.932(B).[8]

## IV. ASSIGNING SEPARATE PETITION NUMBERS TO MULTIPLE PETITIONS WITHIN A SINGLE CASE FILE

Finally, the prosecution argues that this Court should remand this case in order for the trial court to correct its error in (1) failing to assign a unique petition number to each of the three original petitions within respondent's combined case file, and (2) failing to place the separate petition numbers on each document within the case file. We agree.

"To preserve an issue for appellate review, the issue must be raised before, addressed by, and decided by the lower court." *In re Killich*, 319 Mich App 331, 336; 900 NW2d 692 (2017). The prosecution did not argue below that the trial court failed to assign separate petition numbers to each of respondent's three separate juvenile delinquency petitions. Accordingly, this issue is unpreserved.

Generally, this Court reviews de novo the interpretation of statutes and court rules. *Kerr*, 323 Mich App at 411. However, unpreserved issues are reviewed for plain error affecting a party's substantial rights. *In re Tiemann*, 297 Mich App 250, 257; 823 NW2d 440 (2012), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. *Id*. at 763-764.

MCR 8.119(D)(1) states that, in juvenile delinquency cases, "a separate petition number shall be assigned to each petition filed under the juvenile code, MCL 712A.1, *et seq.*, as required under MCR 1.109(D)(1)(d)." Both the case number and the petition number "shall be recorded in the court's automated case management system and on the case file." MCR 8.119(D)(1). "In

---

[8] In light of our holding that the trial court acted in accordance with MCL 780.786b in ultimately dismissing the second and third petitions, there is no basis to remand before a different judge.

a case filed under the juvenile code, the caption must also contain a petition number, where appropriate." MCR 1.109(D)(1)(d).

It does not appear that the trial court assigned a separate petition number to each of the three separate petitions against respondent as required by the Michigan Court Rules. MCR 8.119(D)(1); MCR 1.109(D)(1)(d). Moreover, the fact that the trial court unauthorized the second and third petitions is irrelevant because MCR 8.119(D)(1) specifically requires that all petitions *filed* under the juvenile code contain a separate petition number, not just those petitions that are *authorized*. The prosecution contends that the trial court's failure to assign separate petition numbers for each of the three petitions in respondent's combined case file "hinders the People's . . . ability to identify which documents in the casefile apply to which of Respondent's delinquency cases." Accordingly, a limited remand is appropriate for the trial court to complete the ministerial tasks of (1) assigning a separate petition number to each of the three petitions filed against respondent, and (2) placing the separate petition numbers on each case file document that relates to the corresponding petition. MCR 8.119(D)(1); MCR 1.109(D)(1)(d).

## V. CONCLUSION

Accordingly, we affirm the trial court's decision unauthorizing respondent's second and third petitions and removing them from the adjudicative process. However, we remand this case to the trial court in order to complete the ministerial tasks of (1) assigning separate petition numbers to each of respondent's three juvenile delinquency petitions, and (2) placing the separate petition numbers on all documents within respondent's case file that are related to each petition. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto

-16-